UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-5080(DSD/JSM)


Prairie Sky Ltd., James
Gasperini, Landsmiths LLP,
and Peter Vujovich,

       Plaintiffs,

v.                                                                    **ORDER**

John R.  Daley and
Margaret Daley,

       Defendants.


    Thomas B. Hatch, Esq., Damien A. Riehl, Esq. and Robins,
    Kaplan, Miller & Ciresi, 2800 LaSalle Plaza, 800 LaSalle
    Avenue South, Minneapolis, MN 55402, counsel for
    plaintiffs.

    David K. Snyder, Esq., Joshua D. Christensen, Esq. and
    Eckberg, Lammers, Briggs, Wolff & Vierling, 1809
    Northwestern Avenue, Suite 110, Stillwater, MN 55082,
    counsel for defendants.


This matter is before the court upon the parties' cross
motions for summary judgment.  For the following reasons, the court
denies defendants' motion and grants plaintiffs' motion in part.


## BACKGROUND

This is a breach of contract action for damages, rescission
and specific performance.  Plaintiff Peter Vujovich is the owner of
Vujovich Design-Build, a company that builds and remodels homes.
Plaintiff James Gasperini is a lawyer, real-estate investor and

principal partner of plaintiff Landsmiths, LLP.  On September 11, 2003, Vujovich and Landsmiths, LLP, purchased a ninety-acre parcel of land in Afton, Minnesota.  Later the same day, Vujovich sold fifty acres of the parcel to defendants John R. Daley and Margaret Daley, executing a purchase agreement with various clauses concerning development of the entire ninety-acre parcel.  Vujovich and Landsmiths, LLP, assigned the rights to the other forty acres to plaintiff Prairie Sky, Ltd.  Prairie Sky claims that the Daleys breached the purchase agreement, and the Daleys counterclaim on twelve grounds including breach of contract, breach of fiduciary duty, unjust enrichment and fraud.

In mid-2003, Vujovich and Gasperini became interested in purchasing ninety acres of undeveloped land in Afton, Minnesota. The land included a unique trout stream that attracted the Daleys' interest.  Sometime in 2003, the Daleys were referred to Vujovich about acquiring a portion of the land.  Vujovich introduced them to Gasperini as an attorney who could assist in the purchase and possible joint development of the ninety-acre parcel.  The Daleys did not participate in negotiating or establishing the terms of the initial purchase of the land, but Mr. Daley alleges that Vujovich told him the asking price for the ninety acres was $4.5 to $5 million dollars.  The Daleys also allege that Vujovich said he would negotiate with the landowners on their behalf, repeatedly referred to Mr. Daley as a partner and played the role of advisor

2

or agent for the Daleys.  However, Vujovich never fully informed the Daleys of negotiation details or the purchase price for the entire ninety acres.  Mr. Daley alleges that he asked to see a copy of the purchase agreement for the ninety acres, but was never shown one.  Vujovich ultimately acquired the land for $3 million.

While negotiating with Vujovich and Gasperini for the purchase of the fifty acres, Mr. Daley repeatedly mentioned that he had an attorney reviewing various proposed agreements even though he did not actually seek legal advice at that time.  The Daleys first sought legal advice on or about August 8, 2003, when an attorney reviewed a proposed purchase agreement for them.

On August 10, 2003, Vujovich and the Daleys executed the purchase agreement, which provided that the Daleys would purchase a fifty-acre parcel within the ninety acres for $2.5 million, contingent upon a successful closing of the initial sale of the ninety acres to Vujovich.  The Daleys also agreed to provide (1) land for a cul de sac for overall development of the ninety acres and (2) a trail easement.  Following appraisal of the fifty acres at $2 million, the parties amended the purchase agreement on September 7, 2003, to reflect a reduced purchase price of $2 million.  The parties also added amendments requiring the Daleys to (1) pay $360,000 towards development costs, (2) satisfy Afton Park land dedication requirements and (3) enter into a construction contract with Vujovich Design-Build.

3

On September 11, 2003, Vujovich closed on both the purchase of the ninety acres and the sale of the fifty-acre parcel to the Daleys.  In November of 2003, the Daleys received a quitclaim deed from the original landowners, rather than a warranty deed from Vujovich as required by the parties' purchase agreement.  As to development, Vujovich and the Daleys had initially decided to submit a single subdivision plan to the City of Afton for the entire ninety acres.  However, disagreements arose and Gasperini ultimately submitted a plan for Vujovich's forty acres, which was approved.  The development of the forty acres is now complete, whereas the Daleys have neither submitted a plan nor started any construction on their fifty acres.  Apart from the purchase price, the Daleys have not satisfied certain terms of the purchase agreement and its amendments by (1) paying only $50,000 of the $360,000 post-closing payment, (2) failing to provide land for a cul de sac and Afton Park dedication and (3) failing to provide a trail easement.

On December 27, 2004, Prairie Sky, as successor-in-interest of the forty-acre parcel, filed this action alleging breach of contract and seeking damages, declaratory judgment, specific performance and rescission.[1]  The Daleys counterclaimed, alleging a violation of Minnesota Statute section 82.41, breach of fiduciary

---

[1] Prairie Sky added the alternative remedy of rescission in its amended complaint filed October 27, 2005.

duty, a violation of the Minnesota Uniform Partnership Act, fraud, constructive trust, entitlement to an accounting, unjust enrichment, tortious interference with prospective business advantage, breach of contract, breach of the covenant of good faith and fair dealing and seeking declaratory judgment and rescission or reformation of the purchase agreement.  On September 9, 2005, the Daleys filed suit against Gasperini, Vujovich, Landsmiths LLP, Landsmiths, Inc., and unnamed parties, setting forth claims almost identical to their counterclaims in Prairie Sky's action.  On October 25, 2005, upon stipulation of the parties, the court consolidated the two cases by merging the Daleys' action into Prairie Sky's action.  Prairie Sky then filed an amended complaint, and the Daleys filed an amended answer with counterclaims. Although Gasperini, Vujovich, Landsmiths LLP, and Landsmiths, Inc., are not named as plaintiffs in Prairie Sky's amended complaint, they are designated as plaintiffs in this action as a result of the consolidation.[2]  The parties now move for summary judgment on all claims and counterclaims.

---

[2] The court notes that Gasperini, Vujovich, Landsmiths LLP, and Landsmiths, Inc., would more properly be designated as third-party defendants.  However, pursuant to the stipulation to consolidate and the order for consolidation, those parties are to be treated as plaintiffs.  (<u>See</u> Stipulation to Consolidate, Oct. 18, 2005; Order for Consolidation, Oct. 25, 2005.)

**DISCUSSION**

I.   **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  <u>See id.</u> at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party.  <u>See id.</u> at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  <u>See Celotex</u>, 477 U.S. at 324.  Moreover, if a party cannot support each essential element of its claim or counterclaim, summary judgment

must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.   "[C]onstruction of a written contract is a question of law for the district court and therefore summary judgment is particularly appropriate."   Knudsen v. Transp. Leasing/Contract, Inc., 672 N.W.2d 221, 223 (Minn. Ct. App. 2003).

## II.  Plaintiff Prairie Sky's Claims

The Daleys argue that they are entitled to summary judgment on Prairie Sky's claims because the purchase agreement between the parties precludes all remedies sought by Prairie Sky.  Contract terms must be given their "plain and ordinary meaning" and will not be considered ambiguous merely because the parties dispute the terms' interpretation.  Knudsen, 672 N.W.2d at 223.  The court construes the contract as a whole and avoids harsh or absurd results.  Brookfield Trade Ctr., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998).  Ambiguity arises "if, based upon its language alone, [the contract] is reasonably susceptible of more than one interpretation."  Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997).

The Daleys contend that the purchase agreement only allows Prairie Sky to seek cancellation of the contract or specific performance.  The contract language cited by the Daleys appears in the section "Title Corrections and Remedies":

> C.   If title is marketable, or is made marketable as
>      provided herein, and Buyer defaults in any of the

agreements herein, Seller may elect either of the
following options, as permitted by law:

1.   Cancel this contract as provided by statute
     and retain all payments made hereunder as
     liquidated damages.

2.   Seek specific performance within six months
     after such right of action arises, including
     costs and reasonable attorney's fees, as
     permitted by law.

(Snyder Aff. Ex. A at 3.)  In response, Prairie Sky argues, among
other things, that the remedies limitation applies only when the
buyer fails to close after being presented with marketable title.
The court agrees.  According to the relevant contract language, the
remedies limitation applies if title is marketable or "made
marketable as provided *herein*, and Buyer defaults in any of the
agreements *herein*."   (Id. (emphasis added)) "Herein" can mean
either "in this passage" or "[in this] document."  Webster's Third
New International Dictionary 1059 (1993).  As indicated by the
phrase "[i]f title ... is made marketable as provided herein," the
term "herein" refers only to the Title Corrections and Remedies
section because only that section describes how the seller may make
title marketable.  In other words, "herein" does not refer to the
entire purchase agreement, as the Daleys assume.  As a result, the
immediately following condition that the buyer default "in any of
the agreements herein" also refers only to the buyer's obligations

as set forth in the Title Corrections and Remedies section.[3]   The primary agreement in that section, as it relates to the buyer, is that "closing shall take place" after the seller presents marketable title. (Snyder Aff. Ex. A at 2.)  Therefore, applying the plain language of the purchase agreement, the seller is limited to the remedies prescribed in the Title Corrections and Remedies section only upon the seller presenting marketable title and the buyer refusing to close.

Moreover, such an interpretation avoids absurd or harsh results.   In the event of a breach of the purchase agreement, Prairie Sky's ability to cancel the agreement and keep all payments received makes sense only in the context of the Daleys' failure to close and Prairie Sky retaining any deposits made.  By contrast, it would be an absurd and harsh result to allow Prairie Sky to cancel the purchase agreement and keep all payments after the Daleys had tendered the purchase price.  Further, the cases cited by the Daleys to support their argument that the remedies limitation should apply all involved situations where the buyer failed to

---

[3] The court recognizes that the next section in the purchase agreement, titled "Notices," also contains the word "herein." (See Snyder Aff. Ex. A at 3.)  It reads: "All notices required herein shall be in writing ...."  (Id.)  Because no notices are discussed or required in the Notices section itself, the term "herein" plainly applies to the entire purchase agreement.  Even though such an interpretation differs from the court's interpretation of the same term in the "Title Corrections and Remedies" section, it still falls within the plain and ordinary meaning of "herein" and does not create any conflict within the purchase agreement as a whole.

close.  See Fabian v. Sather, 316 N.W.2d 10, 10 (Minn. 1982);
Helmers v. Bernstein, 1989 WL 84167, No. C4-88-2318, at *1 (Minn.
Ct. App. Aug. 1, 1989); Real Estate Dynamics v. Genzler, 369 N.W.2d
22, 24 (Minn. Ct. App. 1985).

For all of the above reasons, the court finds that the plain
and ordinary meaning of the terms of the purchase agreement
provides that the remedies limitation applies only if the Daleys
failed to close or otherwise breached the agreements in the Title
Corrections and Remedies section.  Prairie Sky does not allege that
the Daleys failed to close or otherwise breached any agreement in
the Title Corrections and Remedies section.  Therefore, Prairie Sky
is not limited to the remedies prescribed in that section, and the
Daleys' motion for summary judgment must be denied.

**III.  Defendants' Counterclaims**

**A.    Violation of Minnesota Statute Section 82.41**

Plaintiffs argue that they are entitled to summary judgment on
the Daleys' counterclaim that Vujovich unlawfully acted as a real
estate broker on their behalf without a license.  Minnesota law
provides that "[n]o person shall act as a real estate broker,
salesperson, or real estate closing agent unless licensed as herein
provided."  Minn. Stat. § 82.41, subd. 1.  A "real estate broker"
includes one who "for another and for commission, fee, or other
valuable consideration or with the intention or expectation of
receiving the same" directly or indirectly sells, buys, offers or

10

attempts to negotiate a sale or purchase of an interest in real estate. Id. § 82.17, subd. 18(a).

Plaintiffs contend that the Daleys have failed to present any evidence that Vujovich received, or expected to receive, a commission or fee for his role in the real estate purchase. The Daleys respond that Vujovich received a commission in the form of an inexpensive or free forty-acre parcel of land. However, the Daleys confuse Vujovich's self-interested dealings with a commission or fee from them. They cite no legal authority to support their contention that a person's independently negotiated profit from the sale of land qualifies as a commission or fee. Rather, the cases cited by the Daleys involve either entirely different issues or commissions actually paid from the complaining parties. See Townsend v. Doss, 618 S.W.2d 173, 174 (Ark. Ct. App. 1981) (involving negligence and duty of care, not role as broker); Henderson v. Hassur, 594 P.2d 650, 654 (Kan. 1979) (parties had entered into express agency contract for commission and fees); Bedow v. Watkins, 539 N.W.2d 414, 415 (Minn. Ct. App. 1995) (involving alleged broker's other activities, in addition to receiving $65,000 from plaintiffs, to determine if real estate license was required), rev'd on other grounds, 552 N.W.2d 543 (Minn. 1996).

The Daleys have not pointed to any evidence in the record that they offered Vujovich a commission or fee or that he expected the

same from them.  For this reason, they have failed to establish an essential element of their real estate broker counterclaim, and the court need not reach the issue whether Vujovich also acted on their behalf.  Summary judgment in favor of plaintiffs on this counterclaim is warranted.

**B.   Breach of Fiduciary Duty**

Plaintiffs argue that they are entitled to summary judgment on the Daleys' counterclaim that Vujovich breached a fiduciary duty. "A fiduciary relationship exists when one party places its trust and confidence in the other," resulting in the latter having superiority over and influence on the former.  Gibson v. Coldwell Banker Burnet, 659 N.W.2d 782, 788 (Minn. Ct. App. 2003).  Evidence of business experience disparities, familial relationships, financial control, repeated assurances and invited confidence may suffice to show a fiduciary relationship.  See id.; Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985); Kennedy v. Flo-Tronics, Inc., 143 N.W.2d 827, 830 (Minn. 1966) (superiority and influence typically found in cases involving "the young, the gullible and inexperienced, or the simple and unwary").  However, a fiduciary relationship does not exist by one party merely having faith and confidence in another where the former should have known the latter was representing an adverse interest.  S. Minn. Mun. Power Agency v. City of St. Peter, 433 N.W.2d 463, 468 (Minn. Ct. App. 1988). An agency relationship gives rise to fiduciary duties when "the

understanding that one is to act primarily for the benefit of another" exists.  Restatement (Second) Agency § 13 cmt. b (1958).

The Daleys contend that a fiduciary relationship existed based on their allegation that Vujovich said he and Gasperini "got a great deal for [the Daleys]."[4]  (Daley Dep. at 84.)  The Daleys also point to (1) Vujovich's communications with their banker regarding their financing, (2) Vujovich's self-proclaimed role as "liaison" to help others find and buy property and (3) their trust and confidence in Vujovich.  Although the existence of a fiduciary relationship is a question of fact, Toombs, 361 N.W.2d at 809, the court finds that the evidence proffered by the Daleys fails to raise any issue of fact regarding the creation of such a relationship.  In particular, the Daleys have failed to point to any evidence that they actually placed their trust and confidence in Vujovich[5] or that he exercised superiority and influence over them.  Even if they did place trust and confidence in him, however, they should have known that his interest in selling them fifty of

---

[4] The Daleys also allege that he said, "[w]e are merely advisors here, to give you the benefit of some past experience." (Snyder Aff. Ex. 22.)  However, that statement was in an email sent months after closing and in reference to developing the Daleys' fifty acres.  Therefore, the statement did not involve the land purchase, and the court will not consider it at this time.

[5] The court notes that Mr. Daley's repeated statements to Vujovich that they had an attorney reviewing proposed agreements and giving them specific advice, when in fact they did not, directly contradicts their allegation that they placed their trust in Vujovich.

the ninety acres was adverse to their interest in getting "a great deal."   See S. Minn. Mun. Power Agency, 433 N.W.2d at 468. Further, his and Gasperini's alleged knowledge of their finances does not constitute control or influence.[6]

In the alternative, the Daleys contend that a fiduciary relationship existed because Vujovich acted as their agent. However, the Daleys have failed to point to any evidence that they exercised control over Vujovich's negotiations with the owners of the ninety acres, which is an essential element to show agency. See Teeman v. Jurek, 251 N.W.2d 698, 702 (Minn. 1977).   Therefore, they cannot maintain their counterclaim based on agency.

For all of the above reasons, summary judgment in favor of plaintiffs on the Daleys' counterclaim for breach of fiduciary duty is warranted.

### C.   Violation of the Minnesota Uniform Partnership Act

Plaintiffs argue that they are entitled to summary judgment on the Daleys' counterclaim that Vujovich violated the Minnesota Uniform Partnership Act.   A partnership is "an association of two or more persons to carry on as co-owners a business for profit." Minn. Stat. § 323A.0101(8).   An essential feature of a partnership involves a joint contribution of experience, capital and energy to

---

[6] Although the Daleys assert that Vujovich and Gasperini obtained the Daleys' personal financial records and loan information, they point to no actual evidence to support their assertion.   Nonetheless, the Daleys' ability to support their assertion does not affect the resolution of this counterclaim.

a common enterprise in which the participants are to share profits. Hansen v. Adent, 57 N.W.2d 681, 684 (Minn. 1953).

Here, the Daleys point to evidence that Vujovich referred to them as "partners" and that they would share profits with him from certain lots on the Daleys' fifty-acre parcel.  Such evidence does not raise an issue of fact as to whether a partnership existed, however, because the Daleys have failed to show any joint contribution to a common enterprise.  Rather, they have merely pointed to passing comments by Vujovich and to a provision in the purchase agreement that reflected consideration from the Daleys for development services Vujovich would provide to them.  For these reasons, the Daleys' partnership counterclaim must fail, and summary judgment in favor of plaintiffs on that count is warranted.

### D.   Fraud and Misrepresentation

Plaintiffs seek summary judgment on the Daleys' fraud and misrepresentation counterclaim.   As to the alleged misrepresentations and acts of fraud discussed by the Daleys in their responsive memorandum, the court finds that genuine issues of material fact preclude summary judgment. (See Defs.' Mem. Resp. to Pl.'s Mot. Summ. J. at 28-34.)  Therefore, plaintiffs' motion as to the Daleys' fraud counterclaim is denied.

### E.   Constructive Trust

Plaintiffs argue that they are entitled to summary judgment on the Daleys' constructive trust counterclaim.  A constructive trust

15

may be imposed when necessary to avoid unjust enrichment or if the court finds that it would be "morally wrong" for a property holder to retain title. <u>Spiess v. Schumm</u>, 448 N.W.2d 106, 108 (Minn. Ct. App. 1989). The Daleys base their constructive trust counterclaim on their allegation that Vujovich acted as a broker, agent and fiduciary, but the court has found those claims unsupported. They also contend that a constructive trust could arise from their allegation of fraud related to Vujovich's purchase of the ninety-acre parcel. (<u>See</u> Defs.' Mem. Resp. at 36.) However, the fraud counterclaim relates to the negotiation and resulting purchase agreement between the Daleys and Vujovich for the fifty-acre parcel. The Daleys point to no evidence that they have any entitlement to the entire ninety acres or other property that requires the equitable relief of a constructive trust. Therefore, summary judgment in favor of plaintiffs on the Daleys' constructive trust counterclaim is warranted.

### F.    Entitlement to An Accounting

Plaintiffs seek summary judgment on the Daleys' counterclaim for an accounting. The Daleys respond that their counterclaim for breach of fiduciary duty entitles them to an accounting. However, the court has granted summary judgment on their breach of fiduciary duty counterclaim. Therefore, summary judgment in favor of plaintiffs on defendants' counterclaim for an accounting is warranted.

16

### G.    Unjust Enrichment

Plaintiffs argue that they are entitled to summary judgment on the Daleys' unjust enrichment counterclaim.  Based in part on the issues of fact related to the Daleys' fraud counterclaim, the court finds that genuine issues of material fact preclude summary judgment on their unjust enrichment counterclaim.  Cf. Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Can., Ltd., 552 N.W.2d 254, 268 (Minn. Ct. App. 1996) (unjust enrichment claim may be based upon fraud).

### H.    Tortious Interference with Prospective Business Advantage

Plaintiffs argue that they are entitled to summary judgment on the Daleys' tortious interference counterclaim.  To establish their claim, the Daleys must show that Vujovich intentionally and improperly interfered with their prospective business relations by (1) inducing or otherwise causing a third person not to enter into or continue such a relation or (2) preventing the Daleys from acquiring or continuing a business relation.  See United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632 (Minn. 1981).  The Daleys assert that they have sufficiently stated such a claim, pointing to the fact that Vujovich informed them that the original owners of the ninety acres were reclusive and difficult to deal with and that the Daleys needed him to negotiate with the owners.

The Daleys have failed to allege facts sufficient to establish wrongful interference with any potential business relationship. In particular, Vujovich's alleged statement to them did not prevent them from acquiring a business relation with the owners. In fact, the Daleys have not shown or even alleged that Vujovich's statement was untrue and have otherwise failed to explain how such a statement is improper or wrongful. See Glass Serv. Co., Inc. v. State Farm Mut. Auto. Ins. Co., 530 N.W.2d 867, 871 (Minn. Ct. App. 1995) (true statements do not support tortious interference claim). As to any blank allegations that he wrongfully interfered, such assertions are insufficient. See Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 832 (8th Cir. 1996) (mere speculation as to interference and wrongfulness fail to establish tortious interference claim under Minnesota law). For these reasons, summary judgment in favor of plaintiffs on the Daleys' tortious interference counterclaim is warranted.

## I.   Breach of Contract

Plaintiffs argue that they are entitled to summary judgment on the Daleys' breach of contract counterclaim because the merger doctrine precludes their claim. The Daleys' counterclaim is based on Vujovich's failure to provide them a warranty deed as required by the purchase agreement. However, "[t]he merger doctrine generally precludes parties from asserting their rights under a purchase agreement after the deed has been executed and delivered."

Bruggeman v. Jerry's Enters., Inc., 591 N.W.2d 705, 708 (Minn. 1999).   The underlying premise of the doctrine is that all conditions precedent to a sale are deemed to have merged into the deed.  Id. at 709.  The merger doctrine operates as a presumption that may be overcome by showing, for example, that the parties intended the condition at issue to be performed after closing.  Id.

The Daleys argue that the merger doctrine does not apply because they received the quitclaim deed from the original owners and not from Vujovich.  They point to no legal authority to support their argument.   It is undisputed that the presentation of a warranty deed from Vujovich was a condition precedent to the sale of the fifty acres.  Despite his failure to execute such a deed, the Daleys accepted the quitclaim deed from the original owners. Pursuant to the merger doctrine, the Daleys' acceptance of the quitclaim deed gives rise to the presumption that the merger doctrine precludes their breach of contract counterclaim.   The Daleys have failed to overcome the presumption because they have not demonstrated that the parties intended the warranty deed condition to persist after closing.  For these reasons, the court finds that the Daleys have failed to establish their counterclaim for breach of contract.  Therefore, summary judgment is warranted.

**J.   Rescission or Reformation**

Plaintiffs seek summary judgment on the Daleys' counterclaim for rescission or reformation.  However, they concede that this

19

counterclaim survives if the court does not grant summary judgment on the Daleys' fraud counterclaim.  Because the court denies summary judgment on the fraud counterclaim, plaintiffs' motion is also denied as to the Daleys' rescission or reformation counterclaim.

**K.   Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiffs argue that they are entitled to summary judgment on the Daleys' counterclaim for breach of the covenant of good faith and fair dealing.  "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."  In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995) (quoting Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 45 (Minn. 1984)).  Here, the Daleys have not alleged or set forth any facts to show how Vujovich or Gasperini may have hindered the Daleys' ability to perform their obligations under the purchase agreement and its amendments.  Therefore, summary judgment in favor of plaintiffs on the Daleys' counterclaim for breach of the covenant of good faith and fair dealing is warranted.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendants' motion for summary judgment [Doc. No. 63] is denied.

2.    Plaintiffs' motion for summary judgment [Doc. No. 68] is granted in part and denied in part.


Dated:  July 27, 2006


                                    s/David S. Doty
                                    David S. Doty, Judge
                                    United States District Court